Jeffrey K. Rubin (AK Bar # 8206061)
Friedman | Rubin
51 University Street, Suite 201
Seattle, WA 98101
Ph: 206-501-4446
Fax: 206-623-0794
e-mail: jrubin@friedmanrubin.com
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SHARON LANDERS, M.D., | Case No. 3:15-cv-_____ |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | |
| 24/7 PLUMBING AND HEATING, INC. and LINTON SCOTT DANIELS, | |
| Defendant. | |

COMES NOW Sharon Landers, M.D., by and through her attorneys and alleges as follows:

1. Plaintiff is resident of the State of Nevada;

2. Defendant 24/7 Plumbing and Heating, Inc. is an Alaska business owned and operated by Linton Scott Daniels, an Alaska Resident. 24/7, while identified as a corporation in state filings, has a single shareholder, defendant Daniels, and Mr. Daniels is identified on the State of Alaska Division of Corporations website as 24/7's president, vice president, secretary, treasurer and registered agent.[1] On information and belief, at all times relevant hereto, Mr. Daniels has resided within Kenai, Alaska within the Third Judicial District of the State of Alaska.

3. Pursuant to 28 U.S.C. § 1332(a)(1), there is complete diversity of citizenship between plaintiff and defendants and plaintiff has suffered injuries and seeks damages in excess of $75,000.00, exclusive of interest and costs.

---

[1] http://commerce.state.ak.us/CBP/Main/CorporationDetail.aspx?id=124689 (accessed June 5, 2015).

*Landers v. 24/7 Plumbing and Heating, et al.*      Page **1** of **5**
Case No. 3:15-cv-_____

4. Plaintiff owns a vacation home in Soldotna, Alaska. In August 2013, having not visited her vacation home since 2009, plaintiff decided to come to Alaska for a vacation.

5. After her last visit, knowing it would be sometime before she would be able to return, she had the home winterized so it would not suffer damage while empty.

6. In advance of returning in August 2013, Dr. Landers asked her Alaska neighbor, Jaci Ledoux, who held keys to the home, to assist in having it prepared for occupancy.

7. Ms. Ledoux arranged for Layne Giugler, a local worker who had previously winterized and de-winterized Dr. Landers' home, to come to the house to de-winterize it in advance of Dr. Landers' arrival. When Mr. Giugler arrived, Ms. Ledoux, unlocked the home and turned off the alarm system so that Mr. Giugler could go about his work.

8. De-winterizing the home involved clearing water pipes of RV antifreeze and checking the heating system. While in the process of checking the heating system, Mr. Giugler determined it was not working. While Mr. Giugler works on hot water heating systems, the heating system in Dr. Landers' home is a hot air system which he does not work on. After completing that work which he could do, Mr. Giugler alerted Ms. Ledoux to the fact that the heating system was not working and that she would need to arrange for someone else to fix it. After he left, Ms. Ledoux locked up the house and turned on the alarm system.

9. Ms. Ledoux contacted defendant 24/7 Plumbing and Heating to come and fix the heating system in Dr. Landers' home. On Friday, August 23, 2013, defendant Daniels arrived at the home which Ms. Ledoux unlocked for him. She turned off the alarm so he could enter and do his work.

10. In order to fix the heating system, Mr. Daniels had to enter the crawl space. The crawl space is accessed through an opening in the floor at the entrance to a walk-in

*Landers v. 24/7 Plumbing and Heating, et al.* Page **2** of **5**
Case No. 3:15-cv-_____
Case 3:15-cv-00111-RRB   Document 1   Filed 06/30/15   Page 2 of 5

closet. When the crawl space is not being accessed, a fitted cover fits securely in this opening.

11. When he entered the crawl space, Mr. Daniels discovered that a fan was not working and needed to be replaced. Mr. Daniels called and ordered a replacement fan. He told Ms. Ledoux that he had done so and that he would return on Monday August 26, 2013 to replace the fan and restore the heating system to working order. Ms. Ledoux told him that would be perfect because Dr. Landers and friends would be arriving that day.

12. Mr. Daniels did not replace the crawl space cover prior to leaving the job on August 23, 2013. Mr. Daniels did not barricade the crawl space opening or otherwise leave warning for those who might follow him into the home that he had left an unguarded hazardous condition behind.

13. Without knowing that the crawl space entry was left open and unguarded, Ms. Ledoux turned on the alarm system and locked up the house to await Mr. Daniels return to complete his work on Monday August, 26, 2013, and for Dr. Landers' arrival later that same day.

14. Defendants did not return to the job on August 26, 2013.

15. Between when defendants left the job on August 23, 2013 and when Dr. Landers arrived on August 26, 2013, Ms. Ledoux, who had sole possession of the keys, did not let anyone into Dr. Landers' home and the armed alarm system did not go off.

16. On August 25, 2013, Dr. Landers flew from Las Vegas, Nevada to Anchorage, Alaska where she overnighted prior to traveling to her vacation home in Soldotna.

17. On August 26, 2013, Dr. Landers traveled to Soldotna, arriving there at approximately 8:00 p.m.

18. Upon arriving at her vacation home, Dr. Landers obtained keys from Ms. Ledoux and entered her home. While showing her guests around, Dr. Landers turned the corner into the master closet and without warning or the ability to protect herself,

fell into the unguarded open crawl space entrance that defendants left behind when they left the job on August 23, 2013.

19. As a result of falling into the crawl space on August 26, 2012, Dr. Landers suffered physical injuries including bruising, abrasions, a concussion, broken bones and pain and suffering. The injuries suffered in the fall included a comminuted fracture of the greater turberosity of the right humerus and closed fracture of the surgical neck of the right humerus.

20. As a result of the injuries suffered, plaintiff incurred medical expenses and suffered a loss of income, both immediately after her injuries and thereafter.

21. Plaintiff continues to suffer pain and loss of full pain-free function as a result of the injuries suffered when she fell through the unguarded open crawl space entry left by defendants on August 23, 2013.

22. The conduct of defendants 24/7 and Linton Scott Daniels in leaving an open, unguarded crawl space opening was negligent and caused the injuries suffered by plaintiff when she fell through the open, unguarded crawl space entry.

23. Having been placed on notice that Dr. Landers would be arriving on August 26, 2013, the conduct of 24/7 and Linton Scott Daniels in not closing the crawl space opening, not barricading said opening, and not providing any warning that the opening was present was reckless. Such reckless conduct caused the injuries suffered by plaintiff when she fell through the open, unguarded crawl space entry.

24. Wherefore, plaintiff demands judgment against defendants and each of them, for the following:

    a. Personal physical injury;
    b. Mental and emotional distress;
    c. Past and future medical expenses;
    d. Lost earnings;
    e. Reduction in earning capacity;
    f. Costs, attorney fees and pre-judgment interest as provided by law; and

1.     g.   Such other relief as the Court deems appropriate.

Dated this 29th day of June, 2015.

                                            s/ Jeffrey K. Rubin
                                            Jeffrey K. Rubin
                                            Friedman | Rubin
                                            Attorneys for Sharon Landers, M.D.